UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-21705-RAR

**NORTH AMERICAN ELITE
INSURANCE COMPANY,**
*as subrogee of EdgeConneX, Inc.*,

      Plaintiff,

v.

**STEWART & STEVENSON FDDA LLC,**
*d/b/a* Florida Detroit Diesel-Allison,

      Defendant.
_____/

## ORDER GRANTING MOTION TO TRANSFER VENUE

**THIS CAUSE** comes before the Court upon Defendant Stewart & Stevenson FDDA LLC's (Stewart & Stevenson) Renewed Motion to Transfer to the Southern District of Texas Pursuant to Mandatory Forum-Selection Clause ("Motion"), filed on February 21, 2023. [ECF No. 26]. Plaintiff North American Elite Insurance Company ("North American") filed a Response in Opposition on March 7, 2023, [ECF No. 27], and Defendant filed a Reply on March 21, 2023, [ECF No. 31]. The Court having carefully considered the relevant submissions and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Motion [ECF No. 26] is **GRANTED** for the reasons set forth herein.

## BACKGROUND

North American brings this action as the subrogee of EdgeConneX, Inc. ("EdgeConneX") against Stewart & Stevenson for its allegedly faulty maintenance work performed on two of

EdgeConneX's generators: GENSET AA and GENSET AB.[1] Mot. at 2. EdgeConneX had hired an entity called Facility Gateway Corp "to provide maintenance to the generators." *See* Resp. at 11, 12 (citing Gerena Decl. [ECF No. 26–1] ¶ 6).[2] Facility Gateway then hired Defendant Stewart & Stevenson to service the generators. *See* Mot. at 3.

On or about November 29, 2018, Stewart & Stevenson performed annual maintenance on the two generators. Compl. ¶ 8. On or about December 4, 2018, GENSET AA allegedly failed while Stewart & Stevenson was performing maintenance. *Id.* ¶ 9. On or about January 2, 2019, GENSET AB failed as well, with both generator's failures allegedly attributable to Stewart & Stevenson's faulty maintenance work. *Id.* ¶¶ 10–12. As a result, EdgeConneX submitted insurance claims for the two generators, and North American paid insurance proceeds to EdgeConneX pursuant to the terms of their insurance policy. *Id.* ¶¶ 13–14.

As subrogee of EdgeConneX, North American now sues Stewart & Stevenson to recoup the insurance proceeds it paid to EdgeConneX for the repairs to the two generators, valued at $526,260.08 and $483,025.07, respectively. *Id.* ¶¶ 15, 24, 33. North American first brought suit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See* [ECF No. 1–2] Ex. 1. Defendant removed this action to the Southern District of Florida on June 3, 2022. [ECF No. 1].

---

[1] An insurer stands in the shoes of its subrogor and has no greater rights than that of its subrogor. *See Cincinnati Ins. Co. v. Superior Guaranty Ins. Co.*, 441 F. Supp. 3d 1271, 1275 (M.D. Fla. 2020) (quotation marks omitted).

[2] "A court may consider affidavits when ruling on a motion to transfer venue under section 1404(a)." *Soffin v. eChannel Network, Inc.*, No. 12-cv-81279, 2014 WL 2938347, at *1 (S.D. Fla. June 20, 2014) (citing *Marbury-Pattillo Const. Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. 1974); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 n.26 (1981)). Accordingly, the Court may consider the Gerena Declaration.

Defendant filed its Motion to Transfer Venue on February 21, 2023. [ECF No. 26]. Defendant contends that the services it provided to Facility Gateway were governed by the Additional Terms of Sale attached to the Invoices, which Facility Gateway had repeatedly paid over the course of their "longstanding business relationship". *See* Mot. at 3; Reply at 4; Gerena Decl. ¶¶ 11–13. Defendant argues that Plaintiff's negligence-based Complaint should actually be pled as a breach of contract action because North American's rights are derived from the Additional Terms of Sale. *See* Reply at 6. Moreover, the Additional Terms of Sale in the Invoices all contained a mandatory forum selection clause, stating in relevant part that:

> The laws of the State of Texas (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Agreement, including without limitation, its validity, interpretation, construction, performance and enforcement. Venue for any action arising out of or relating to this Agreement shall be in Harris County, Texas; and the parties waive any claim of an inconvenient forum.

Gerena Decl. at 9, 13, 17. Thus, Defendant requests the Court transfer this action to the Houston Division of the Southern District of Texas pursuant to 28 U.S.C. § 124(b)(2).

Plaintiff counters that no contractual privity exists between its subrogor, EdgeConneX, and Defendant Stewart & Stevenson. Resp. at 3. Plaintiff argues that EdgeConneX is not "closely related" to Facility Gateway sufficient to bind them as non-parties to the Additional Terms of Sale contained in the invoices exchanged between Facility Gateway and Stewart & Stevenson. *Id.* at 5. With no valid contract, there cannot be an enforceable forum selection clause, Plaintiff argues, and therefore Defendant cannot meet the factors required for a motion to transfer venue. Resp. at 4. The Motion is ripe for review.

## LEGAL STANDARD

Federal law, specifically 28 U.S.C. § 1404(a), governs venue disputes. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). In the absence of a mandatory forum selection clause governing the parties, "a district court considering a § 1404(a) motion [to transfer venue] must evaluate both the convenience of the parties and various public interest considerations." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). A movant has to first establish that the cause could be transferred to another "district where the action might have been brought," 28 U.S.C. § 1404(a); *Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 885 (M.D. Fla. 1993), and then show that transfer is warranted on grounds of convenience and interests of justice, *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Windmere Corp. v. Remington Products, Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).

When a mandatory forum selection clause governs the parties' dispute, however, "this analysis changes dramatically." *See Trump v. Twitter, Inc.*, No. 21-22441, 2021 WL 8202673, at *2 (S.D. Fla. Oct. 26, 2021) (citing *Atl. Marine*, 571 U.S. at 60). The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis. *Atl. Marine*, 571 U.S. at 63. That adjustment, in relevant part, requires courts to disregard plaintiff's choice of forum and shift the burden to plaintiff to establish that transfer to the forum for which the parties bargained is unwarranted. *See id*. It also requires courts to ignore arguments about the parties' private interests and consider only arguments about the public interest factors. *Id.* The result is that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (citing *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). This is because "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.*

To bind a non-party to a forum selection clause agreed to between two parties, the non-party must be closely related to the dispute such that it becomes foreseeable that it will be bound. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)) (internal quotation marks omitted). Although third-party beneficiaries to a contract would, by definition, satisfy the closely related and foreseeability requirements, a third-party beneficiary status is not required. *Id.* (citing *Hugel*, 999 F.2d at 209–210 n.7) (internal quotation marks omitted). If the non-party's interests are "completely derivative" of those of a party to an agreement, and thus "directly related to, if not predicated upon" the interests of the parties, then the non-party can be bound by a forum selection clause in an agreement. *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d. Cir. 1996) (holding that a non-party to an arbitration agreement could not be bound by the agreement unless the non-party's interests were "directly related to, if not predicated upon" the party's conduct)).

## **ANALYSIS**

The questions presented before the Court are: 1) Do the Additional Terms of Sale in Stewart & Stevenson's Invoices constitute a valid contract rendering the forum selection clause enforceable? And if so, 2) Can EdgeConneX as a non-party to those contracts nonetheless be bound by the forum selection clause? The Court answers both questions in the affirmative. The longstanding business relationship between Stewart & Stevenson and Facility Gateway militates in favor of finding that the Additional Terms of Sale constitute a valid contract governing the two parties' business relationship. Moreover, EdgeConneX hired Facility Gateway to perform service on its generators, which Facility Gateway then subcontracted out to Stewart & Stevenson. Resp. at 11–12. Any claims North American (via its subrogor EdgeConneX) has against Stewart &

Stevenson are "directly related to, if not predicated upon" the generator servicing work performed pursuant to the Additional Terms of Sale.  *See Lipcon*, 148 F.3d at 1299.  Accordingly, North American (via its subrogee EdgeConneX) must be bound by the forum selection clause and this matter must be transferred to the Houston Division of the Southern District of Texas.[3]

### 1. *Facility Gateway's Longstanding Business Relationship with Defendant Stewart & Stevenson Renders the Invoices' Additional Terms of Sale Valid Contracts*

Under both Florida and Texas law, a contract may be binding even if the parties did not sign the contract, where both parties have performed under the contract.  *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1269 (S.D. Fla. 2020) (quoting *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 503 (Fla. 4th DCA 2003); *Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 388, 339 (Fla. 3d DCA 2002)) (internal quotation marks omitted); *see also Stout v. Oliveira*, 153 S.W.2d 590, 596 (Tex. Civ. App. 1941); *W. Techs., Inc. v. Omnivations II, L.L.C.*, 583 S.W.3d 786, 793 (Tex. App. 2019).  A party may assent to a contract by performing under the contract.  *ConSeal*, 488 F. Supp. 3d at 1270 (citing *Fenelus*, 853 So. 2d at 503).  Stewart & Stevenson performed services for Facility Gateway on an as-needed basis from about 2015 to late 2018 pursuant to the terms in its Invoices.  Reply at 4; Gerena Decl. ¶¶ 11–14.  These same Invoices with identical Additional Terms of Sale were always sent to Facility Gateway after Stewart & Stevenson serviced EdgeConneX's generators at the behest of Facility Gateway.  Gerena Decl ¶ 5; Reply at 4.  Stewart & Stevenson avers, and Plaintiff does not

---

[3] Although adjudicating the validity of the forum selection clause in this case has required the Court to scrutinize the business relationships and contracts at issue—leading the Court to conclude that the Additional Terms of Sale govern this dispute and render the forum selection clause enforceable—this Order does not address the merits of the underlying claims in this matter.  *See Lipcon*, 148 F.3d at 1289 (stating that as in numerous other cases involving forum selection clauses, the court is able to rule on that discrete issue without passing judgment on the merits of the underlying claims).

deny, that Stewart & Stevenson regularly performed work for Facility Gateway at EdgeConneX's facilities in Miami, Jacksonville, and Tallahassee. Gerena Decl. ¶ 5.

Facility Gateway demonstrated its intent to be bound by the contractual terms by consistently paying the amounts requested in the invoices and never voicing any disagreements with the Additional Terms of Sale. *Id.* ¶¶ 18, 19. "The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1228 (S.D. Fla. 2009) (quoting *Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461, 463 (Fla. 1st DCA 1971)); *see also Fenelus*, 853 So. 2d at 503 (party assented to the contract by performing under the contract); *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App. 2015). Defendant's regular business practice upon receiving a work order from Facility Gateway consisted of performing the work requested, drafting a report of what occurred onsite, and generating invoices containing the report and Additional Terms of Sale. *Id.* ¶ 8–10. Given the longstanding business relationship between Stewart & Stevenson and Facility Gateway, these repair orders and invoices were not usually signed between the parties, *id.* ¶ 13, but were understood to govern Stewart & Stevenson's repair work, *id.* ¶ 17.

Stewart & Stevenson attaches three Invoices covering services performed for Facility Gateway with identical Additional Terms of Sale in each Invoice. *See* [ECF No. 26–1] Exs. 1–3. Exhibits 1 and 2 consist of true and correct copies of Stewart & Stevenson's Invoices for annual maintenance performed on EdgeConneX's generators in November of 2018—the two invoices related to the allegedly faulty repair work in this litigation. *See* Gerena Decl. ¶ 15. Exhibit 3 is a true and correct copy of an invoice Stewart & Stevenson sent to Facility Gateway for an inspection of one of EdgeConneX's generators in May of 2018, six months before the two repair invoices

related to this lawsuit. *Id.* ¶ 16. These verified statements and exhibits convince the Court that Facility Gateway and Stewart & Stevenson had a longstanding business relationship sufficient to render the Additional Terms of Sale in the Invoices valid and enforceable, even if not signed.[4]

North American advances several arguments as to why the Additional Terms of Sale A) do not constitute a valid contract and B) should not be enforceable against its subrogor, EdgeConneX. Resp. at 5–6, 8–9. The Court does not find these arguments sufficiently persuasive to disregard the forum selection clause at issue. First, North American argues that the Invoices were produced after the service was performed by Stewart & Stevenson; would constitute a unilateral alteration of the verbal contract with Facility Gateway; and are not signed by any party. Resp at 5–6. As explained above, the longstanding business relationship between Facility Gateway and Stewart & Stevenson—along with the repeated payment of the Invoices with no dissent—manifests Facility Gateway's intent to be bound by the terms contained in the Invoices. Even though the two Invoices at issue in this litigation were transmitted after the allegedly faulty generator maintenance work occurred, Stewart & Stevenson had transmitted Invoices to Facility Gateway for service of EdgeConneX's generators multiple times previously. *See* Gerena Decl. ¶¶ 11, 16. So, the Additional Terms of Sale were available to all parties before the allegedly faulty maintenance work took place.

Second, North American argues that the forum selection clause is unenforceable because "[the clause] was not reasonably communicated to the Plaintiff's subrogor, EdgeConneX" and therefore the forum selection clause here was achieved through "fraud or overreaching."

---

[4] Stewart & Stevenson only attaches one paid Invoice with the identical Additional Terms of Sale prior to the two at issue in this litigation, but the two parties had contracted regularly from 2015 through late 2018. Gerena Decl. ¶ 5. Defendant avers that the same Additional Terms of Sale "were in every invoice Stewart & Stevenson generated and sent to Facility Gateway, and governed Stewart & Stevenson's work for Facility Gateway at all locations." *Id.* ¶ 11.

Resp. at 8.  Plaintiff cites *Larson v. Kerzner Int'l Hotels Ltd.*, No. 08-22031, 2009 WL 1759585 (S.D. Fla. June 19, 2009) and *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) for this proposition, but notably includes no pincites in either case.  Plaintiff confuses two of the tests laid out in separate portions of *Lipcon*.  The "fraud or overreaching" circumstance described in one portion of *Lipcon* is an element of a test by which courts can determine "if an otherwise valid forum selection clause should be found unreasonable and not enforced."  148 F.3d at 1292.  The "fraud or overreaching" test only applies when a *party* to a contract is attempting to invalidate a forum selection clause that might otherwise bind it.  *See id.*  So here, for instance, only Facility Gateway could make such an argument against Stewart & Stevenson.  But Facility Gateway is not a named party in this lawsuit.  And Plaintiff advances no argument on behalf of Facility Gateway as to why the Additional Terms of Sale was achieved via fraud or overreaching.[5]  Instead, Plaintiff erroneously attempts to extend this test to benefit itself, arguing that Plaintiff's subrogor, EdgeConneX, did not have the opportunity to become meaningfully informed as to the Additional Terms of Sale, and therefore the terms were achieved through fraud or overreaching.  Resp. at 8.[6]  This is an improper application of the "fraud or overreaching" test.

---

[5]  Plaintiff cites various authorities to argue that contract terms presented to a party after full contract performance are invalid if the other party did not have prior notice and was not free to reject them.  Resp. at 9; *Larsen*, 2009 WL 1759585 at *1; *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 238 F.3d 528 (9th Cir. 2003); *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246 (S.D. Fla. 2001).  But Plaintiff's reliance on those cases suffers the same fatal flaw.  These cases all dealt with alleged *parties* to a contract who escaped from the binding terms for reasons such as insufficient communication or inability to negotiate the terms.  Defendant in this matter is not alleging that Plaintiff is a named party in the Invoices or even a third-party beneficiary.  Defendant acknowledges that Facility Gateway was the named party bound by the Invoices' Additional Terms of Sale.  And due to Facility Gateway and Stewart & Stevenson longstanding history of doing business together, none of the infirmities explained in Plaintiff's cited cases render the forum selection clause of the Additional Terms of Sale unenforceable as between Facility Gateway and Stewart & Stevenson.  The *Lipcon* "closely related" test is what Defendant, and this Court, rely on to find EdgeConneX (and therefore North American) bound by the forum selection clause.

[6]  Compounding on this error, Plaintiff then argues that under *Sun Trust Bank*, the Court should engage in a two-part "reasonable communicativeness" test by first looking at the physical characteristics of the contract itself, and then scrutinizing any extrinsic factors indicating whether Plaintiff had the ability to

The test relevant to Plaintiff's circumstances is derived from an entirely different portion of the *Lipcon* opinion, which the Court will refer to as the "closely related" test. *Lipcon*, 148 F.3d at 1299. This test guides federal courts in this Circuit when deciding whether a non-party may be bound by a forum selection clause. The Court will analyze the "closely related" test in the subsequent section.

### 2. The Purpose for Which EdgeConneX Hired Facility Gateway Renders the Invoices Closely Related to the Dispute in Plaintiff's Lawsuit.

To bind a non-party to a forum selection clause agreed to between two parties, the non-party must be closely related to the dispute such that it becomes foreseeable that it will be bound. *Lipcon*, 148 F.3d at 1299 (citing *Hugel*, 999 F.2d at 209) (internal quotation marks omitted). In *Lipcon*, Irmgard and Mitchell Lipcon entered into underwriting agreements with a Lloyd's of London Underwriting Agency specifying London, England as the proper venue for litigating any disputes. *Lipcon*, 148 F.3d at 1288. Their spouses, Charles and Barbara Lipcon, signed letters of credit to put up the collateral for their spouses as underwriters, but they did not sign the underwriting agreements themselves. *Id.* When Charles and Barbara Lipcon filed suit against Lloyd's in Florida, the court held that although they were non-parties to the underwriting agreements, they were still closely related to the dispute and therefore equally bound by the forum selection clause in the underwriting agreements. *Id.* at 1299. Moreover, it was foreseeable that they would be bound by the underwriting agreements' forum selection clause because their interests in litigation related to the underwriting agreements were derivative of their party spouses' interests. *Id.*

---

become meaningfully informed and to reject the contractual terms at stake. Resp. at 8. But this test would only apply if an actual party to a contract were challenging the forum selection clause in question. A different test altogether applies in the instance where a non-party to a contract is attempting to argue that it should not be bound by a valid forum selection clause. *See Lipcon*, 148 F.3d at 1299.

EdgeConneX is similarly closely related to the dispute over whether Stewart & Stevenson adequately performed under the Additional Terms of Sale. EdgeConneX hired Facility Gateway to service its generators and Facility Gateway subcontracted that work out to Stewart & Stevenson. Stewart & Stevenson allegedly damaged the generators. Compl. ¶¶ 8–12. EdgeConneX has a keen interest in the sound servicing of its generators just like the non-party Lipcon spouses had a keen interest in the sound business dealings between Lloyd's of London and their party spouses. *See Lipcon*, 148 F.3d at 1299. When both business dealings allegedly went south, it was foreseeable that the non-parties to the contracts would likely be bound to litigate their related claims pursuant to the contracts' terms. *Compare id. with* Reply at 7–8.

Moreover, EdgeConneX, an ostensibly sophisticated business entity, had to give Stewart & Stevenson's workers permission to enter onto its property to service its generators across multiple cities for many years. *See* Gerena Decl. ¶¶ 5,12, Exs. 1–3. This would have provided EdgeConneX ample opportunities to become aware of the contractual provisions governing Stewart & Stevenson's conduct at the behest of Facility Gateway such that a binding forum selection clause could be foreseeable. For instance, the May 2018 Invoice attached to the Gerena Declaration establishes that EdgeConneX had, or should have had, awareness of Stewart & Stevenson's presence on its property well before the allegedly faulty work at issue in this litigation took place. *Id.* Ex. 3. The Court, therefore, finds it reasonable to conclude that EdgeConneX, while benefitting from Stewart & Stevenson's work over many years across multiple cities, had ample opportunity to inquire as to any terms agreed to between Stewart & Stevenson and its intermediary, Facility Gateway. *See Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509,

514 n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").[7]

In sum, it is clear to the Court from the record presented that the invoices are "closely related to" the subject of Plaintiff's claims such that Plaintiff's claims in fact derive from the terms laid out in the Additional Terms of Sale. North American is effectively suing to enforce the Additional Terms of Sale and therefore must abide by all its provisions.

### 3. *The Forum Selection Clause Combined with the Public Interest Factors Require Transfer of this Matter*

The presence of a valid forum-selection clause almost always results in the transfer of a matter to the bargained-for venue and modifies the normal venue analysis. *Atl. Marine*, 571 U.S. at 63. That adjustment, in relevant part, requires courts to disregard plaintiff's choice of forum, ignore arguments about the parties' private interests, and consider only arguments about the public interest factors. *Id.* Plaintiff makes a generalized public interest factor argument that courts should recognize the right of parties to contract and not to contract. Resp. at 13; *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012). But as explained in-depth above and

---

[7] An alternative ground upon which to decide this case comes from *Norfolk S. Ry. Co. v. Kirby*, where the United States Supreme Court held that an intermediary could bind a cargo owner to the liability limitations it negotiates with downstream carriers despite the cargo owner's lack of contractual privity with the downstream carriers. *See* 543 U.S. 14, 34 (2004). If the cargo owners are (A), the intermediaries are (B) and the downstream carriers are (C), the Supreme Court has explained that a limitation of liability provision agreed to between (B) and (C) can still bind (A) even if (A) did not have notice of it or agree to it. *Id.* This case presents similar circumstances. If EdgeConneX is (A), Facility Gateway as its intermediary is (B) and Stewart & Stevenson as the subcontractor is (C), then here too, (A) is bound by the forum selection clause agreed to between (B) and (C), even though (A) allegedly did not have knowledge of the terms. The Court notes, however, that Plaintiff has not provided any affidavit declaring as much. It is true that the Court is left with a relative dearth of information about the contours of the relationship between EdgeConneX and Facility Gateway. Neither party has produced any contracts between the two parties. Plaintiff merely states that EdgeConneX "engaged" Facility Gateway without explaining what that engagement entailed. The Court, therefore, is unable to conduct any fulsome agency analysis. But agency status is not required for *Norfolk Southern*'s holding to apply. *See* 543 U.S. at 34. There are many circumstantial clues that satisfy the Court that EdgeConneX could have and should have known about the Additional Terms of Service between Facility Gateway and Stewart & Stevenson as described above.

based on the records presented to this Court, Stewart & Stevenson validly contracted with Facility Gateway and performed repeatedly under that contract with the understanding that any disputes "arising out of" its service would be litigated in Harris County, Texas pursuant to the Additional Terms of Sale.  This case is a dispute arising from an allegedly faulty instance of Stewart & Stevenson's servicing of generators being brought by North America, a closely related party to the dispute.  Therefore, the Court sees it in-line with public policy to enforce the valid forum-selection clause here to protect the "legitimate expectations" of all parties involved and "further vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63.

## CONCLUSION

Guided by the foregoing analysis, the Court holds that the mandatory forum selection clause in the Invoices combined with the public interest factor analysis supports transfer to the Houston Division of the Southern District of Texas.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 26] is **GRANTED**. The Clerk is instructed to transfer this case to the United States District Court for the Southern District of Texas, Houston Division, and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida, this 7th day of June, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**